**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KEITH R. MAGIC,

               **Plaintiff,**           **CIVIL ACTION NO. 14-cv-12868**

        **v.**                  **DISTRICT JUDGE STEPHEN J. MURPHY, III**

**COMMISSIONER OF**         **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

               **Defendant.**
_____/

<u>**REPORT AND RECOMMENDATION**</u>

Plaintiff Keith Magic seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 19) and Defendant's Motion for Summary Judgment (docket no. 20). Plaintiff also filed a response to Defendant's Motion. (Docket no. 21.) The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 9.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

**I.      RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 19) be DENIED and Defendant's Motion for Summary Judgment (docket no. 20) be GRANTED.

**II.      PROCEDURAL HISTORY**

Plaintiff filed an application for a period of disability and disability insurance benefits with a protective filing date of February 13, 2012, alleging that he has been disabled since February 4, 2008, due to Tourette's syndrome, depression, anxiety, and post-traumatic stress disorder (PTSD).  (TR 156-57, 189, 193.)  The Social Security Administration denied Plaintiff's claims initially on June 14, 2012 and again upon reconsideration on July 25, 2012.  (TR 66-69.)  Plaintiff subsequently requested a *de novo* hearing.  (TR 78-79.)  On August 26, 2013, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) B. Lloyd Blair.  (TR 31-65.)  In a September 17, 2013 decision, the ALJ found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy.  (TR 14-25.)  The Appeals Council declined to review the ALJ's decision (TR 5-9), and Plaintiff commenced this action for judicial review.  The parties then filed cross motions for summary judgment, which are currently before the Court.

### III.   HEARING TESTIMONY AND MEDICAL EVIDENCE

In his brief, Plaintiff sets forth the procedural history of this matter, summaries of his hearing testimony and his uncle's hearing testimony, and a recitation of the medical evidence that was not included in the ALJ's decision. (Docket no. 19 at 2-7.)  The ALJ set out a detailed, factual recitation with regard to Plaintiff's hearing testimony, Plaintiff's uncle's testimony, Plaintiff's medical record, and the vocational expert's (VE's) testimony in his decision.  (TR 19-23, 24.)   Also, Defendant has included concise summaries of Plaintiff's medical record and hearing testimony in her brief.  (Docket no. 20 at 6-8.)  There are no material inconsistencies between Plaintiff's, the ALJ's, and Defendant's accounts of the record; therefore, the undersigned will incorporate these factual recitations by reference.   Additionally, the undersigned has conducted an independent review of Plaintiff's medical record and the hearing

transcript and will include comments and citations as necessary throughout this Report and Recommendation.

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity between the alleged onset date of February 4, 2008 and the date last insured of December 31, 2009, and that Plaintiff suffered from the following severe impairments: major depression disorder, bipolar disorder, obsessive-compulsive disorder (OCD), and Tourette's syndrome.  (TR 16.)  Next, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (TR 16-18.)  The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except:  simple unskilled work with a specific vocational preparation (SVP) of 1 or 2; brief and superficial contact with the public; work involving only 1, 2 or 3 step instructions; no work involving concentration on detailed precision tasks or multi-tasking, reading, or computing with calculating or problem solving; no work that requires team work or working in close physical proximity of coworkers; work at a flexible pace without an up line or down line coworker depending on the claimant's productivity; and work allowing the claimant to have personal dress and hygiene at less than the normal standard for a general office setting.

(TR 18-23.)  Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy.  (TR 23-24.)  Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from the alleged onset date of February 4, 2008, through the date last insured of December 31, 2009.  (TR 24-25.)

## V.    LAW AND ANALYSIS

3

**A.      Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's

final decisions.   Judicial review of the Commissioner's decisions is limited to determining

whether his findings are supported by substantial evidence and whether he employed the proper

legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127

F.3d 525, 528 (6th Cir. 1997).   Substantial evidence is more than a scintilla but less than a

preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'"  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*,

305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try

cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard*

*v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745

F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the

administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524,

536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).   If the Commissioner's decision is

supported by substantial evidence, it must be affirmed, even if the reviewing court would decide

the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if

substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388,

389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting

that the substantial evidence standard "presupposes that there is a zone of choice within which

the decisionmakers can go either way, without interference by the courts").

**B.      Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).   This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

**C.     Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six

remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994)

(citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter

upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the

decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. §

405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is

reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011

WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and remanded under sentence four

because the ALJ (1) erred in finding that Plaintiff's impairments did not meet or medically equal

Listings 12.04 or 12.06; (2) made an improper credibility determination; and (3) failed to

properly consider the opinion of Plaintiff's treating physician.  (Docket no. 19 at 9-24.)

### 1.     The ALJ's Step-Three Determination

Plaintiff asserts that the ALJ did not properly consider Plaintiff's mental impairments

under the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, in step three of the

sequential evaluation process.  (Docket no. 19 at 9-15.)  The ALJ found that Plaintiff had the

following severe mental impairments at step two of the sequential evaluation process: major

depression disorder, bipolar disorder, OCD, and Tourette's syndrome.  (TR 16.)  The ALJ then

proceeded to determine whether these impairments, individually or in combination with each

other, met or medically equaled the severity of one of the listed impairments under listings 12.04

or 12.06.  (TR 16-18.)

The elements of a mental disorder under listings 12.04 and 12.06 include (1) a medically

substantiated mental disorder; and (2) satisfaction of the "paragraph B" criteria by exhibiting at

least two of the following: a marked restriction in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.04, 12.06.

Alternatively, a claimant may satisfy the requirements of a listed mental impairment if he has a medically substantiated mental impairment and functional limitations that meet the "paragraph C" criteria of the listings. To satisfy the "paragraph C" criteria for listing 12.04, a medically documented history of a chronic affective disorder and one of the following are required: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) a current history of 1 or more years' inability to function outside a highly-supportive living arrangement with a need for such an arrangement to continue. 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04. For listing 12.06, the "C" criteria are met if the mental impairment results in the "complete inability to function independently outside the area of one's home." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.06.

The ALJ considered Plaintiff's severe mental impairments and found that the severity of those impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.04 or 12.06. (TR 16-17.) In reaching this decision, the ALJ determined that the "paragraph B" criteria were not satisfied. (TR 17-18.) He found that Plaintiff had a mild restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties with regard to concentration, persistence, or pace, and had not experienced any

episodes of decompensation of an extended duration.  (TR 17-18.)  The ALJ also found that the record evidence failed to establish the presence of the "paragraph C" criteria.  (TR 18.)

Plaintiff argues that the ALJ's determination that the "paragraph B" criteria were not met is erroneous because the ALJ made that determination by only relying on instances in which Plaintiff was having a good day, and those instances are not representative of Plaintiff's overall ability to perform daily activities, function socially, or focus on and complete tasks in a timely manner.  (Docket no. 19 at 9-15.)  Plaintiff continues that the ALJ should have considered and relied upon all of the record evidence, including evidence of Plaintiff's condition after the date last insured, in evaluating the "paragraph B" criteria.  In fact, this is a recurring argument throughout Plaintiff's brief that she also uses to challenge the ALJ's credibility determination and the ALJ's assessment of Plaintiff's treating physician's opinion.

To qualify for disability insurance benefits, the claimant must demonstrate that he was disabled within the meaning of the Social Security Act and that his disability occurred during a time in which he enjoyed insured status under the Act.  "Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin.,* 88 F. App'x 841, 845 (6th Cir. 2004) (citation omitted).  Likewise, medical evidence after the date last insured is relevant only to the extent it indicates the claimant's condition prior to the date last insured. *See Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988).

Plaintiff's coverage expired on December 31, 2009, and the evidence that Plaintiff claims was given insufficient weight, to which he repeatedly cites in large volumes throughout his brief, dates primarily between 2011 and 2013.  Post-date-last-insured evidence becomes less relevant as the interval between the end of coverage and the generation of the evidence expands. *See Begley v. Mathews*, 544 F.2d 1345, 1354 (6th Cir. 1976).  Moreover, Plaintiff admits, and this

evidence indicates, that his condition deteriorated significantly after 2009.  (Docket no. 19 at 17;

*see* TR 296-465, 481-531, 546-722, 749-824.)  As an example, Plaintiff explains that during the

alleged period of disability, Plaintiff's treating psychiatrist met with Plaintiff several times and

assigned him various GAF scores ranging between 51 and 55, which are indicative of moderate

symptoms.  (Docket no. 19 at 21; TR 877-92.)  From 2011 through 2013, Plaintiff's GAF scores

ranged between 40 and 48, which are representative of serious symptoms.  (Docket no. 19 at 21.)

Furthermore, Plaintiff's treatment notes from 2008 and 2009 reflect that Plaintiff was

consistently and actively seeking employment, exercising on a regular basis, making efforts to

eat healthy, socializing, and trying to date.  (TR 836, 840, 844-45, 850, 852, 865-66, 877.)  This

is a stark difference from Plaintiff's treatment notes from 2011 through 2013, which indicate that

Plaintiff was frequently unable to sort mail, pay bills, clean, cook, throw away trash, or meet

basic life needs and that he sometimes went two days without eating because he could not go to

the store or focus on making food.  (Docket no. 19 at 11, 12 (citing records).)  Hence, the 2011

though 2013 evidence to which Plaintiff cites is not indicative of the nature and severity of

Plaintiff's condition during Plaintiff's alleged period of disability, and the ALJ did not err by not

relying on it in his decision.

Likewise, Plaintiff's recurring argument that the instances cited by the ALJ as examples

of Plaintiff's ability to perform certain tasks are only a "few instances of 'good days' out of a

several year period" where Plaintiff was frequently unable to complete even simple tasks, lacks

merit.  (*See* docket no. 19 at 22.)  Plaintiff's treatment records from the alleged period of

disability are generally consistent throughout and reflect that Plaintiff, although depressed, was

actively seeking employment, exercising, making efforts to eat a healthy diet, and socializing in

some manner; he routinely presented with normal affect, logical thought processes, normal

thought content and perceptions, and normal memory and orientation; and he maintained GAF scores indicative of moderate symptoms. (*See* TR 825-906.) Other than citing to records outside the alleged period of disability, Plaintiff only cites to a few instances in the records from the relevant period in which Plaintiff reported trouble with personal hygiene, trouble focusing, and that he hadn't gotten out of the house much lately. (TR 832, 861, 875, 905.) It is evident that the ALJ considered all of this and cited to dozens of Plaintiff's 2008 and 2009 treatment records; in accordance with Plaintiff's logic, Plaintiff seemingly had more good days than bad during the alleged period of disability. Accordingly, Plaintiff's argument in this regard holds little weight.

For the reasons stated, Plaintiff's argument that the ALJ's step-three determination, credibility determination, and assessment of Plaintiff's treating physician's opinion were erroneous because the ALJ did not rely upon evidence generated after the date last insured and only relied on instances in which Plaintiff was having a good day fail. Plaintiff's Motion should be denied with regard to this issue. To the extent that Plaintiff challenges the ALJ's credibility determination and assessment of Plaintiff's treating physician's opinion on other grounds, the Court will address these issues in turn.

### 2.    *The ALJ's Credibility Determination*

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any

subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "[T]he adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Here, the ALJ considered and discussed Plaintiff's medical record and hearing testimony as well as the hearing testimony of Plaintiff's uncle, and found that Plaintiff's allegations regarding the intensity, persistence, and limiting effects of his symptoms were not fully credible. (TR 22-23.) In making this determination, the ALJ reasoned that Plaintiff's allegations were not fully consistent with the record for the relevant period of February 4, 2008 through December 31, 2009, particularly with regard to the alleged severity of his symptoms and his activities of

11

daily living.  The ALJ then noted that during the relevant period, Plaintiff lived independently, performed personal care tasks, prepared meals, applied for jobs, participated in job interviews, played tennis and music with others, and attended social events.

The ALJ also discussed the treatment that Plaintiff sought and received for his impairments.  The ALJ pointed out that Plaintiff's treatment consisted only of medication administration, case management services, and individual therapy and that Plaintiff had not participated in intensive inpatient treatment, received emergency services, or been hospitalized for his mental health issues.  The ALJ also noted that Plaintiff's treatment records indicate that Plaintiff was consistently progressing with his treatment goals and that his course of treatment was appropriate.  (TR 20-21.)  The ALJ then reasoned that Plaintiff's conservative treatment was inconsistent with the severity of Plaintiff's symptoms as alleged for the relevant period.  Lastly, the ALJ reasoned that although Plaintiff's Tourette's syndrome is a chronic condition that began in childhood and may affect his ability to work in certain environments, Plaintiff was able to work despite this condition in the past.  The ALJ then concluded that the objective medical evidence dated February 4, 2008 through December 31, 2009 is more probative of Plaintiff's condition and limitations than Plaintiff's testimony and other subjective complaints.

Other than Plaintiff's arguments that cite to evidence generated outside the alleged period of disability, which the Court has fully addressed above, Plaintiff argues that "the ability to do intermittent chores does not demand the same level of exertion as working full-time."  (Docket no. 19 at 17, 22-23.)   The ALJ, however, did not discuss Plaintiff's ability to perform intermittent chores in his credibility analysis.  Plaintiff also argues that "[a]lthough there was a period of time in which Plaintiff was actively seeking employment, this does not mean that he would be able to maintain working full-time."  (Docket no. 19 at 20.)  The period of time

12

Plaintiff refers to is, in fact, the alleged period of disability.  But Plaintiff's treatment records indicate that Plaintiff did work in some capacity during the relevant time period.  (TR 829, 832, 834, 885.)  Also, as Defendant points out, the ALJ was entitled to factor Plaintiff's ability to maintain employment into his credibility determination.  (Docket no. 20 at 13 (citing *Miller v. Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013) ("[T]he ALJ did not err by considering [the plaintiff's] ability to maintain part-time employment as one factor relevant to the determination of whether he was disabled.")).)

Finally, Plaintiff argues that his lack of mental health hospitalizations does not render his allegations incredible.  (Docket no. 19 at 20-21.)  As discussed above, however, the ALJ did not base his credibility determination solely on this one fact; he noted this fact as part of his overall analysis of Plaintiff's treatment in accordance with 20 C.F.R. § 404.1529(c)(3).  Plaintiff's arguments of error with regard to the ALJ's credibility determination fail.  The undersigned finds that the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the Court the weight that he gave to Plaintiff's statements and the reasons for that weight.  The ALJ's assessment of Plaintiff's credibility is supported by substantial evidence.

### 3. The ALJ's Assessment of Plaintiff's Treating Physician's Opinion

It is well settled that the opinions of treating physicians are generally accorded substantial deference.  In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors:  (1) length of the treatment relationship and the frequency of examination; (2) nature and

13

extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)). An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not

14

hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

Dr. John W. Cain II, M.D. of Volunteer Behavioral Health Care System treated Plaintiff for his mental impairments numerous times in 2008 and 2009 as well as in 2011 and 2012. (TR 296-99, 383-416, 504-08, 877-92.)   The parties do not dispute that Dr. Cain was Plaintiff's treating psychiatrist.  Dr. Cain's treatment records from the relevant time period consist of two-page Physician/Medical Progress Notes, which primarily document Dr. Cain's management of Plaintiff's medications.  At each of Plaintiff's appointments between September 2008 and December 2009, Dr. Cain assessed Plaintiff's mental status and consistently found that Plaintiff's affect, thought content, perceptions, memory, and orientation were normal and that Plaintiff's speech and thought process were logical.

Dr. Cain completed a mental Medical Source Statement regarding Plaintiff on May 17, 2012, in which he explained that Plaintiff has Tourette's syndrome complicated by chronic major depression. (TR 472-75.)  Dr. Cain also assessed the severity of Plaintiff's limitations resulting from his impairments.  For example, he rated Plaintiff's abilities to perform activities of daily living; to understand, remember, and carry out detailed, simple instructions; to follow work rules; and to demonstrate reliability, as fair.  Dr. Cain rated Plaintiff's abilities to interact and communicate appropriately with others; to maintain concentration, persistence, or pace; to adapt to stressful circumstances in work-like settings; to behave in an emotionally stable manner, to maintain his personal appearance, and to relate to supervisors and co-workers, as poor.  Dr. Cain affirmed that Plaintiff limitations have lasted "since prior to December 2009" and opined

that in light of Plaintiff's impairments and limitations, Plaintiff could not be reasonably expected to be reliable in attending an eight hour a day, forty-hour work week, week after week.

In his decision, the ALJ discussed Dr. Cain's treatment records and Medical Source Statement and assigned Dr. Cain's opinion little weight. (TR 21-22.) The ALJ expressed that Dr. Cain's diagnoses of major depression and Tourette's syndrome were supported by the records from that time period, but found that the limitations assessed by Dr. Cain were not supported. The ALJ reasoned that Plaintiff's records reflect that he was consistently noted to have appropriate and normal speech and logical thought processes and that he was making progress toward his treatment goals. The ALJ also reasoned that during the adjudicated period, Plaintiff was actively seeking employment and engaging in social activities, which the ALJ regarded as an indication that both Plaintiff and his treating mental health providers believed that obtaining a job was something Plaintiff was capable of doing, at least during the alleged period of disability.

Plaintiff argues that the ALJ erred in assigning little weight to Dr. Cain's opinion because the records cited by the ALJ only represent the "rare occasion" when Plaintiff's symptoms had subsided enough to perform those tasks and are not representative of Plaintiff's ability to perform those activities on a sustained basis. (Docket no. 19 at 24; docket no. 21 at 2-3.) To support this argument, Plaintiff compares his GAF scores from 2008 and 2009, which were assessed by Dr. Cain and indicate moderate symptoms, to those from 2011 to 2013, which indicate serious symptoms, and argues that the GAF scores assessed after the insured period demonstrate that Plaintiff's mental health had declined. (Docket no. 21 at 4.) Plaintiff's argument is self-destructive. Plaintiff admits that Dr. Cain consistently assessed moderate symptoms during 2008 and 2009; however, Dr. Cain's May 17, 2012 opinion rated the majority

16

of Plaintiff's functional abilities as poor, meaning that they were usually precluded.  As the ALJ

reasoned, Dr. Cain's May 17, 2012 opinion is inconsistent with his treatment notes from 2008

and 2009.   Furthermore, as discussed above, Plaintiff's treatment notes from 2008 and 2009

demonstrate that Plaintiff was consistently and actively seeking employment, exercising on a

regular basis, making efforts to eat a healthy diet, socializing, and trying to date.  (TR 836, 840,

844-45, 850, 852, 865-66, 877.)  Accordingly, the treatment records from 2008 and 2009 cited

by the ALJ in giving little weight to Dr. Cain's opinion do not merely represent a "rare

occasion" of moderate symptoms, as Plaintiff suggests.

Plaintiff also challenges the weight given to Dr. Cain's opinion by arguing that the

opinion is consistent with his uncle's hearing testimony.  (Docket no. 21 at 4.)  The ALJ

discussed Plaintiff's uncle's hearing testimony and only assigned it some weight on the basis

that it was inconsistent with the medical record and Plaintiff's GAF scores.  (TR 20.)  Notably,

Plaintiff does not challenge this assessment.  Finally, Plaintiff argues that the ALJ failed to

evaluate all six factors listed under 20 C.F.R. § 404.1527(c)(2)-(6) and that the ALJ's rationale

does not articulate good reasons for discounting Dr. Cain's opinion.  (Docket no. 19 at 24.)  As

discussed above, an ALJ is not required to articulate each of the six factors in assessing a

treating physician's opinion, but he is required to provide good reasons for his decision.  Based

on the discussion above, the undersigned finds that the ALJ provided good reasons for assigning

little weight to Dr. Cain's opinion, which are supported by the evidence of record and are

sufficiently specific to clarify the reasons for that weight.  Plaintiff's Motion should be denied

with regard to this issue.

## VI.    CONCLUSION

For the reasons stated herein, the Court should DENY Plaintiff's Motion for Summary Judgment (docket no. 19) and GRANT Defendant's Motion for Summary Judgment (docket no. 20).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 18, 2015          s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE

18

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: August 18, 2015                    s/ Lisa C. Bartlett
                                          Case Manager